## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| JIBRI WARD-RICHARDSON and YESENIA ROBAINA, individually and on behalf of similarly situated individuals, | § § § § | **CLASS ACTION** |
| | § | CIVIL ACTION FILE NO. |
| Plaintiffs, | § § | 2:21-CV-235-RWS |
| v. | § § | |
| FCA US LLC, | § § | |
| Defendant. | § § | |

## CLASS ACTION COMPLAINT

COME NOW Plaintiffs Jibri Ward-Richardson ("Ward-Richardson") and Yesenia Robaina ("Robaina"), on behalf of themselves and all similarly situated individuals who purchased or leased a Jeep Wrangler 4xe, and hereby files this Class Action Complaint against FCA US LLC ("FCA") and show the Court as follows:

## INTRODUCTION

1.     FCA is the manufacturer and seller, through its licensed dealerships, of the Jeep Wrangler 4xe.  The Jeep Wrangler 4xe is a plug-in hybrid electric vehicle (the "Class Vehicles") first released in 2021.

2.     Car manufacturers owe a duty to ensure that the vehicles they manufacturer and sell to consumers are safe.   That duty is violated when it sells vehicles that, unbeknownst to drivers contain faulty electronic and/or computer systems that cause the vehicles to suddenly, and without warning, shut down.

3.     It should go without saying that a vehicle suddenly, and without warning, shutting down is incredibly dangerous to drivers, passengers, and other vehicles in the roadway.  Yet, that is exactly what happens with the Class Vehicles.

4.     FCA knows of the defect, but has stubbornly refused to a) disclose it to consumers; b) notify existing owners and lessees; c) recall the Class Vehicles; and d) take all other steps necessary to protect consumers from the danger.

5.     The defect, causing the Class Vehicles to suddenly shut down, threatens every driver and passenger in a Class Vehicle, threatens every other person on a roadway near a Class Vehicle, and severely diminishes the value of the Class Vehicles.  Consumers who purchased or leased Class Vehicles have been harmed by purchases or leases they would not have made had they known the truth of the defect.

## PARTIES, JURISDICTION, AND VENUE

6.      FCA is a Delaware limited liability company subject to the jurisdiction of this Court.  FCA may be served by serving its registered agent, The Corporation Company, at 106 Colony Park Drive, Suite 800-B, Cumming, Forsyth County, Georgia 30040.

7.      This Court has jurisdiction pursuant to the Class Action Fairness Act, as the amount in controversy exceeds the sum or value of $5,000,000.00 and any member of the proposed class is a citizen of a state different than Defendant.

8.      Venue is proper in this Court.

## BACKGROUND STATEMENT OF FACTS – WARD-RICHARDSON

9.      Ward-Richardson is the lessee of a new 2021 Jeep Wrangler 4xe, VIN # 1C4JJXR63 (the "Ward-Richardson Jeep"), having acquired the Ward-Richardson Jeep on September 17, 2021.

10.     After completing the paperwork to acquire the Ward-Richardson Jeep, Ward-Richardson was driving the vehicle home.  Less than 2 miles from the dealership and shortly after merging onto Interstate 81, the Ward-Richardson Jeep suddenly, and without warning, shut off all systems.

11.     Ward-Richardson immediately called the dealership, who instructed him to return the vehicle to the dealership for a "quick" fix.  The dealership advised Ward-Richardson that the vehicle was safe to drive.

12.     On September 22, 2021, the authorized Jeep dealership contacted Ward-Richardson and advised that a software update was performed on the Ward-Richardson Jeep and that the vehicle was fully repaired.  The vehicle was returned to Ward-Richardson on September 24, 2021.

13.     Shortly after taking possession of the Ward-Richardson Jeep, Ward-Richardson began driving the vehicle towards the interstate.

14.     As Ward-Richardson approached the interstate, the engine in the vehicle again suddenly shut down, several error messages were displayed on the information screen, the check engine light illuminated, and the vehicle would not accelerate.

15.     The Ward-Richardson Jeep came to a complete stop, narrowly avoiding other traffic on the public roadway.  Ward-Richardson immediately contacted the authorized Jeep dealership who advised him to have the vehicle towed to the dealership for service.

16.     On October 1, 2021, the dealership claimed the vehicle was fully repaired and notified Ward-Richardson to pick up the vehicle.  However, while the

service advisor was driving the vehicle to return it to Ward-Richardson, the check engine light illuminated.  The dealership kept possession of the vehicle in order to continue making repairs.

17.    On October 12, 2021, the dealership again reported to Ward-Richardson that the vehicle was repaired and that it was ready to be picked up.  At no time did the dealership, FCA, or any other person on behalf of FCA inform Ward-Richardson that the Ward-Richardson Jeep was not safe to drive.

18.    On October 23, 2021, Ward-Richardson, along with members of his family, were driving the Ward-Richardson Jeep on Interstate 64 approaching Staunton, Virginia.

19.     Shortly after exiting the interstate, the check engine light illuminated on the dashboard, along with a hybrid service message.  While pulling into a parking lot, the vehicle completely shut down and became inoperable.

20.    Ward-Richardson again called Jeep Roadside Assistance.  Jeep Roadside Assistance indicated that it would tow the vehicle to a service department closest to Ward-Richardson's location, rather than to the dealership that had previously conducted service repair work.  Jeep Roadside Assistance refused to tow the vehicle to an authorized Jeep dealership that was more convenient for

Ward-Richardson, and as such, Ward-Richardson had the vehicle towed at his own expense.

21.    As of November 3, 2021, FCA's authorized dealership claimed that the issue could not be replicated and therefore told Ward-Richardson to pick up the vehicle.  However, upon information and belief, the Ward-Richardson Jeep was not adequately repaired.

## BACKGROUND STATEMENT OF FACTS - ROBAINA

22.    Robaina is the owner of a new 2021 Jeep Wrangler 4xe, VIN # 1C4JJXP63******** (the "Robaina Jeep"), having acquired the Robaina Jeep on July 10, 2021.

23.    On July 13, 2021, Robaina was driving the Robaina Jeep and its "check engine light" illuminated, indicating an engine fault.

24.    On July 14, 2021, Robaina took the Robaina Jeep to an authorized Jeep dealership for service.  At that time, the Robaina Jeep's computer indicated numerous errors related to the functioning of the vehicle.  However, the authorized Jeep dealership claimed to Robaina that the check engine light was caused by the gas pump when Robaina last filled the Robaina Jeep with fuel.

25.    The authorized dealership cleared the error codes from the Robaina Jeep's computer and released the vehicle to Robaina.    At no time did the

authorized Jeep dealership inform Robaina of the hazards associated with the Robaina Jeep, the existence of numerous others having substantially similar problems, or of the numerous reports and complains made to FCA and the NHTSA concerning the safety of the Jeep Wrangler 4xe.

26.    On October 17, 2021, the Robaina Jeep suffered a catastrophic failure of its propulsion system.  Specifically, the Robaina Jeep suddenly and without warning failed to start multiple times.

## FCA KNOWS OF THE DEFECT BUT HAS INTENTIONALLY FAILED TO NOTIFY THE PUBLIC

27.    The Class Plaintiffs' situations are, unfortunately, not unique.

28.    As detailed on reports filed with the National Highway Traffic Safety Administration, numerous consumers across the United States have suffered similarly.

29.    For example, on June 7, 2021, a consumer reported:

> *This is about the new Jeep Rubicon 4XE Hybrid Wrangler.  We were traveling slowly on a dirt road in our new Jeep.  Suddenly it began to slow down and it stopped.  It would not move any further.*

30.    On June 25, 2021, a consumer reported:

> *A charging system error caused engine to shut down.  I was driving down the road at about 30-40 mph and the vehicle just shut down.  I was stopped in the right lane of traffic.*

31.    On July 11, 2021, a consumer reported:

*The vehicle gave a Service Hybrid Electric System error and disabled the engine at approximately 60 mph when traveling in E-Save mode . . .  After navigating the vehicle to the side of the road, it came to a hard stop at about 5-8 mph.*

32.    On August 2, 2021, a consumer reported:

*I was driving at night on a 4-lane highway at approximately 55 mph southbound in the left land.  My hybrid vehicle had less than 1% of battery power and was running using the gas engine.  With no warning the vehicle suddenly experienced a sudden deceleration to less than 10 mph . . .*

33.    On August 3, 2021, a consumer reported:

*I was driving vehicle on HWY 610 in Houston, Texas at approximately 55-60 MPH.  Suddenly, vehicle simply stopped working in the middle of driving . . .*

34.    On August 18, 2021, a consumer reported:

*Vehicle shut down in the middle of road.  All lights on dash came on and vehicle became disabled . . .*

35.    On September 3, 2021, a consumer reported:

*As I approached a stop sign while braking, the Jeep seized up, shut off, and gave the Electronic Stability Control warning.  I attempted to restart and it didn't start or get out of park . . . I'm grateful that I was at a stop sign unlike some of the other reports of this issue that were on the highway.*

36.    On September 10, 2021, a consumer reported:

*Charging Fault Error came on as my wife was driving home when he 2021 Jeep Wrangler 4XE suddenly shut off and came to a [sic] immediate halt.  She was barely able to prevent a major accident . . .*

37.    On September 20, 2021, a consumer reported:

*On 9/16/21, my vehicle dangerously lost power, following a very loud sound and a violent shudder. Power for braking and steering was lost. The vehicle had no response to the accelerator pedal . . .*

38.    The above reports are just a sampling of the reports made to NHTSA. Unfortunately, not all such incidents have been reported as this defect is endemic with the Class Vehicle with many consumers being put in harm's way.

39.    In addition to reports to NHTSA, Class Plaintiffs, and numerous others, have made reports directly to FCA.

40.    Despite those reports, FCA has failed and refused to notify the public the danger and risk, failed and refused to issue accurate bulletins, warnings, or other notifications to owners and lessees of the Class Vehicles.

41.    FCA's refusal is intentional.

42.    While refusing to notify the public of the dangers, FCA has instead:

a. advertised the Class Vehicles by having the President of the United States drive one during an electric vehicle event;

b.  increased the MSRP of the Class Vehicles;

c.  boasted and advertised the safety and engineering marvel of the Class Vehicles;

d.  bragged about its profitability on Twitter; and

e.  bragged about the Class Vehicles being the bestselling hybrid electric vehicle of the second quarter of 2021.

## CLASS ALLEGATIONS

43.    The proposed Class is defined as:

All individuals in the United States of America who purchased or leased any Jeep Wrangler 4xe.

44.    Alternatively, Class Plaintiffs may propose sub-classes for all individuals in each State who purchased or leased any Jeep Wrangler 4xe.

45.    Excluded from the Class are: 1) Defendant, or any entity or division of Defendant in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; 2) the judge to whom this case is assigned and the judge's staff; 3) any judge, and such judge's staff, who may otherwise hear or consider any aspect of this case, including appeal; 4) those persons who have suffered personal injuries as a result of the facts alleged herein.

46.     There is a well-defined community of interest in this litigation and such Class is readily ascertainable.

47.     <u>Numerosity</u>: although the exact number is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of class members' claims in a single action will provide substantial benefits to all parties and to the Court.  Class members are readily identifiable from information and records in Defendant's possession and records.

48.     <u>Typicality</u>: The Class Plaintiffs' claims are typical of the claims of all class members in that Class Plaintiffs and class members purchased and/or leased a Class Vehicle that was designed, manufactured, and distributed by FCA.  Class Plaintiffs, like all class members, has been damaged by FCA's misconduct. Furthermore, the factual bases of FCA's misconduct are common to all class members and represent a common threat resulting in injury to all class members.

49.     <u>Commonality/Predominance</u>:  Common questions of law and fact to Class Plaintiffs and class members predominate over any question affecting individual class members.

50.     <u>Adequate Representation</u>:  Class Plaintiffs will fairly and adequately protect class members' interests.  Class Plaintiffs have retained attorneys

experienced in complex commercial litigation, including product liability actions, and Class Plaintiffs intend to prosecute this action vigorously.

51.    <u>Superiority</u>:  Class Plaintiffs and class members have all suffered and will continue to suffer harm and damages as a result of FCA's wrongful and unlawful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most class members would likely find the cost of litigation prohibitively high and would therefore have no effective remedy at law.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation.

## COUNT I – FRAUDULENT CONCEALMENT – ALL STATES

52.    Class Plaintiffs incorporate the allegations contained in Paragraph 1 through 51 as if set forth verbatim herein.

53.    FCA intentionally misrepresented and actively concealed the above-described material safety information, or acted with reckless disregard for the truth, and denied Class Plaintiffs and class members information that is highly relevant to their purchasing decisions.

54.    The Class Vehicles purchased or leased by Class Plaintiffs and class members were defective, unsafe, and unreliable, because, among other reasons, they were subject to sudden and immediate stalling or shutting down even while the vehicle was operating at normal driving speeds.

55.    FCA had a duty to disclose this material safety information to Class Plaintiffs and members of the class because of the safety hazards posed by the alleged defects and based on its representations to the contrary.

56.    FCA's concealment was material because if it had been disclosed, Class Plaintiffs and class members would not have bought or leased the Class Vehicles.

57.    FCA intentionally engaged in deception in order to sell the Class Vehicles, and despite actual knowledge of their defects, has *raised* the price of the Class Vehicles, heavily advertised the Class Vehicles, and boasted about its sales and profitability.

58.    Class Plaintiffs and class members relied on FCA's reputation as an automaker, and FCA's intentional omission of the defects in the Class Vehicles and FCA's affirmative assurance that its vehicles were safe and reliable, and other similar statements, when they purchased or leased the Class Vehicles.

59.     As a result of their reliance, Class Plaintiffs and class members have been injured in an amount to be proven at trial, including but not limited to, their lost benefit of the bargain, diminished value of the Class Vehicles, emotional distress, and other damages caused by FCA's intentional fraud.

### COUNT II – PUNITIVE DAMAGES

60.     Class Plaintiffs incorporate the allegations contained in Paragraph 1 through 51 as if set forth verbatim herein.

61.     FCA's conduct as described herein was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard to the rights of Class Plaintiffs and class members.  Class Plaintiffs are therefore entitled to an award of punitive damages.

### COUNT III – ATTORNEYS' FEES AND EXPENSES

62.     Class Plaintiffs incorporate the allegations contained in Paragraph 1 through 51 as if set forth verbatim herein.

63.     FCA's conduct as described herein was intentional, in bad faith, and stubbornly litigious.  Accordingly, Class Plaintiffs are entitled to an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT IV - INJUNCTION

64.     Class Plaintiffs incorporate the allegations contained in Paragraph 1 through 51 as if set forth verbatim herein

65.     The Class Vehicles pose an immediate risk of physical harm to Class Plaintiffs and the class members, all passengers of the Class Vehicles, and all other members of the public on the roadways.

66.     An injunction would prevent future harm that is predictable, immediate, and severe, and prevent FCA's continuing torts.  There is not otherwise a complete and adequate remedy at law.

67.     Accordingly, this Court should order FCA to immediately recall the Class Vehicles and remove them the roadways until such time as FCA corrects the defects with the Class Vehicles.

### JURY DEMAND

68.     Class Plaintiffs demand trial by jury.

**WHEREFORE**, Class Plaintiffs request this Court:

      a.  issue summons and process as provided by law;

      b.  certify a class as requested herein;

     c.  grant damages and all other relief that is just and proper against FCA;

     d.  enjoin FCA from continuing to sell the Class Vehicles and order FCA to recall the Class Vehicles.

RESPECTFULLY SUBMITTED this 3rd day of November 2021.

*/s/ Aaron M. Kappler*
AARON M. KAPPLER
Georgia State Bar No. 272533

For the Firm of
THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092
(770) 925-0111
akappler@tokn.com
*Attorneys for Class Plaintiffs and Putative Class*